**UNITED STATES of America**

v.

**Howard L. SMITH, Jr.**

**No. 1:97CR0341.**

United States District Court, E.D. Virginia, Alexandria Division.

June 22, 1998.

**MEMORANDUM OPINION**

ELLIS, District Judge.

Defendant Howard L. Smith, Jr., is before the Court for sentencing after being found guilty by a jury on February 26, 1998, of two offenses: (i) second-degree murder, in violation of 18 U.S.C. § 1111 and (ii) prisoner possession of a shank, in violation of 18 U.S.C. § 13, assimilating Virginia Code § 53.1–203(4). Among the disputed sentencing issues is whether defendant should be treated as a "career offender" under U.S.S.G. § 4B1.1 based on his two prior felony convictions in the District of Columbia. Given the overriding importance of this issue to the sentencing decision, the parties, at the first two sentencing hearings, were accorded the opportunity to file supplemental memoranda on this issue, and a third sentencing hearing was scheduled for further oral argument. This Memorandum Opinion sets forth the facts and reasons for the Court's conclusion that defendant merits treatment as a career offender.

I

The record reflects that in December 1996 defendant was an inmate at the Central Facility of the Lorton Reformatory Complex, a penal institution of the District of Columbia located in Lorton, Virginia, within the special maritime and territorial jurisdiction of the United States, in the Eastern District of Virginia. On December 16, 1996, defendant murdered Donnell Keith McDowell, a fellow inmate, by stabbing McDowell with a homemade knife, also known as a "shank". As a result, defendant was indicted for first-degree murder, and for prisoner possession of a shank. After a four-day jury trial, defendant was found guilty, not of first-degree murder, but of second-degree murder, the lesser included offense. He was also found guilty of prisoner possession of shank.

As the record reflects, the instant offense is not defendant's first murder conviction; it is his second. Nor are the two murder convictions his only violent felony·convictions; defendant's record also reflects a conviction for assault with a dangerous weapon. The facts and circumstances of these other con-

Helen F. Fahey, United States Attorney, Daniel L. Bell, II, Assistant United States Attorney, Alexandria, VA, for Plaintiff.

Robert L. Jenkins, Jr., Pleasant S. Brodnax, III, Brodnax & Jenkins, Alexandria, R. Stanley Powell, Arlington, VA, for Defendant.

victions are, of course, central to disposition of the disputed "career offender" issue and are therefore detailed here chronologically.

On March 29, 1987, defendant shot and killed a man named Able. The shooting occurred in the course of a burglary of a Southeast Washington, D.C., apartment. Defendant was not apprehended following his murder of Able. Less than two months later, he committed another violent crime. On May 25, 1987, defendant shot and wounded four victims in an altercation outside a District of Columbia nightclub. The circumstances of this nightclub shooting are rather chilling. Defendant is alleged to have put a gun to the head of one victim and fired a shot into his temple. Surprisingly, the victim survived. Another victim testified before the D.C. Superior Court Grand Jury that after defendant shot the first victim he continued to stand over him "just clicking but there wasn't [sic] no bullets in it [defendant's gun] so I figured he tried to kill him. There wasn't [sic] no bullets in there but he was still clicking the gun." Defendant was apprehended and arrested following the nightclub shooting.

Then, on December 9, 1987, defendant's killing of Able led to his indictment in the Superior Court for the District of Columbia on four charges: (i) burglary in the second degree while armed, (ii) murder in the first degree while armed, (iii) carrying a pistol without a license, and (iv) felony murder. Before this matter could be tried, however, a superseding indictment issued on January 5, 1988, in which defendant was re-indicted for the murder of Able and the related offenses, and he was also indicted for the nightclub shootings. According to an affidavit of an experienced supervisor in the Felony Clerk's Office of the District of Columbia Superior Court, the United States Attorney's Office for the District of Columbia sometimes seeks to join or consolidate cases by means of obtaining an indictment or superseding indictment that joins or lumps charges together.

The next event of note occurred on January 19, 1988. A record of the docket entry reflects that on that date, a hearing was held, apparently for purposes of defendant's arraignment. This record pertains to Docket No. F–6416–87, the nightclub shooting case, and it includes the notation "consolidated case F–5779–87," the Able murder case. There is no formal entry of a consolidation order signed by a judge, nor any indication that a judge formally considered the relatedness or unrelatedness of the two cases in connection with the consolidation.

Following the January 5, 1988, indictment, and the January 19, 1988, docket entry, defendant was tried before a jury on the charges growing out of the Able murder, but not the nightclub shootings. This trial resulted in a conviction on all four charges. At sentencing on September 20, 1988, defendant received (i) twenty years to life on the first-degree murder charge, (ii) twenty years to life on the felony-murder charge, (iii) five to fifteen years on the burglary-while-armed charge, and (iv) one year on the charge of carrying a pistol without a license. The sentences for the burglary, felony murder, and first-degree murder convictions were imposed to run concurrently with one another, while the firearms sentence was imposed to run consecutively to those sentences. A subsequent appeal resulted in the affirmance of defendant's convictions, but also a remand of the case to the trial court with instructions to set aside the conviction and sentence for felony murder on the ground that it was duplicative of the first degree murder conviction and hence constituted a multiple conviction for the same crime. *See Smith v. United States*, No. 88–1290, slip op. at 4 (D.C. Ct. of App. June 17, 1991). In reaching its decision, the District of Columbia Court of Appeals noted that defendant murdered Able as an act of revenge because the victim, who had previously been assaulted by defendant or his confederates, had retaliated by striking defendant's car with a floor lamp. *See id.* at 2.

Thereafter, on January 30, 1989, defendant pled guilty to assault with a dangerous weapon, a lesser included offense to the charges stemming from the May 25, 1987, nightclub shootings. For this conviction, defendant was sentenced on March 20, 1989, to a term of imprisonment of two to six years to run concurrently with the sentences previously

imposed for the convictions relating to defendant's murder of Able.

In summary, it appears that defendant's two prior violent felony convictions were for crimes committed on different dates against different victims at different locations. It also appears that the matters were initially not indicted together and never consolidated by a formal court order. And finally, the record reflects that the matters were disposed of separately, on separate dates, one by jury trial and the second by plea, and that the sentences were imposed on separate dates. On the other side of the ledger, the matters were ultimately charged together in a superseding indictment, a docket entry indicates the matters were consolidated, after which they appear to have proceeded under the same docket number,[1] and the sentence for the nightclub shooting was imposed to run concurrently with the sentences for the Able murder. On these facts, the significant question[2] presented is whether the convictions for the Able murder and the nightclub shootings are two separate violent felony convictions such that defendant should be treated as a career offender pursuant to U.S.S.G. § 4B1.1.

## II

Analysis properly begins with U.S.S.G. § 4B1.1, which provides, in part, that a defendant over eighteen convicted of a violent crime is to be sentenced as a career offender if he has "two prior felony convictions … [for] crime[s] of violence." And, § 4B1.2 straightforwardly defines "crimes of violence" as offenses involving the use or threatened use of force, a definition that plainly encompasses this defendant's prior two convictions. But this is not the end of the analysis, as § 4B1.2 instructs that whether prior convictions may be separately counted for career offender purposes is governed by the provisions of U.S.S.G. § 4A1.2, which in turn define the circumstances in which prior

sentences are to be counted separately because they are unrelated. Specifically, Application Note 3 to § 4A1.2 states that prior sentences are considered related (and hence not counted separately), (1) when they occurred on the same occasion, which undisputably is not true here, (2) when they were part of a single common scheme or plan, which also is undisputably not true here, or (3) when they were consolidated for trial or sentencing, which is hotly disputed here.

The precise language of Application Note 3 merits close scrutiny given the settled rule that the Commentary to the Guidelines, including Application Notes, is entitled to controlling weight unless plainly inconsistent with the Constitution, a statute, or a guideline. *See Stinson v. United States*, 508 U.S. 36, 46, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). This language reads simply "consolidated for trial or sentencing," which language, strictly speaking, does not fit the instant facts. The two prior violent crimes, the Able murder and the nightclub shootings, were not "consolidated for trial"; to the contrary, they were tried or disposed of separately, on separate dates in separate proceedings, the Able murder by jury trial in 1988 and the nightclub shootings by a guilty plea in 1989. Similarly, the two offenses were not "consolidated for … sentencing"; defendant was sentenced for the Able murder on September 30, 1988, long before he entered his guilty plea to the nightclub shootings and was sentenced for that crime in January and March 1989, respectively. So, to say in these circumstances that the matters were "consolidated for trial or sentencing" stretches this phrase well beyond its plain and ordinary meaning.

Nor is this the only ground for treating the matters as unrelated. There is apposite, indeed controlling, Fourth Circuit authority compelling the same result. In *United States v. Allen*, 50 F.3d 294 (4th Cir.

---

1. The two judgment and conviction orders, issued separately on different dates and reflecting sentences imposed on different dates, nonetheless bear the same docket number, F–6416–87.

2. The question is significant because of its impact on defendant's sentencing range. If career offender treatment is appropriate, defendant's sentencing range is three hundred sixty (360) months to life imprisonment, whereas absent such treatment the range is markedly lower, namely one hundred eighty-eight (188) to two hundred thirty-five (235) months.

1995), a defendant convicted of bank robbery argued that two prior state sentences, one for attempted breaking and entering and the other for theft were related and hence could not be counted separately for § 4B1.1 career offender purposes because he was charged with both offenses on the same day and the charges were processed together through arraignment, guilty plea, and sentencing. The district court disagreed, concluding that the convictions should be counted separately because the offenses were factually unrelated and no formal order of consolidation had been entered. On appeal the Fourth Circuit affirmed the district court, announcing the principle that is dispositive here. Simply put, this principle holds that there is an important distinction between formal and informal consolidation, and that only formal consolidation is contemplated in Application Note 3. *See id.* at 297. In this regard, formal consolidation occurs only on the entry of a judicial order, whereas informal consolidation can occur without the entry of such an order, perhaps as a result of a court practice or at the instance of a docket clerk, neither of which may be based on a considered judicial judgment about the relatedness of the consolidated matters. *See id.* at 298. As *Allen* teaches, it is important that Applica-

tion Note 3 be restricted to formal consolidations because only in formal consolidations is there reasonable assurance that a judicial officer has weighed the relatedness of the matters pursuant to a rule or statute governing the circumstances under which offenses or defendants may be joined in criminal cases. *See id.*[3] And it is only when this reasonable assurance exists that it makes sense, under Application Note 3, to defer to a prior consolidation of cases. *See id.*[4]

The instant case cannot be meaningfully distinguished from *Allen.* In both cases, the prior offenses are factually unrelated: they are different crimes that occurred on different dates involving different victims. And significantly, no formal consolidation order was entered in either case. The only distinction between *Allen* and this case is that in *Allen* the two prior offenses were processed together through arraignment, guilty plea, and sentencing under separate docket numbers, while the prior offenses in the instant case were processed separately, albeit under the same docket number. This distinction is not significant. If anything, it underscores the absence of relatedness in the instant case because the fact that the prior offenses here

**3.** In federal courts, the governing considerations for joinder of offenses and defendants are set forth in Rule 8, Fed.R.Crim.P. Similar provisions are in effect in many states. *See, e.g.,* D.C.Super. Ct. R. 8 (providing that Rule 8 is identical to Fed.R.Crim.P. 8).

**4.** For more recent Fourth Circuit decisions following *Allen, see United States v. Daniels,* 1998 WL 115964 (4th Cir. Mar.17, 1998) (holding that unless the district court had entered a formal consolidation order, the two previous offenses had not been consolidated for plea and sentencing merely by virtue of a Rule 20 transfer); *United States v. Breckenridge,* 93 F.3d 132, 137 (4th Cir.1996) ( "[A]lthough totally unrelated cases may be informally consolidated for sentencing . . . it seems unlikely that the Sentencing Commission intended such cases to be treated as 'related' for . . . determining career offender status. In such circumstance, a court must enter a formal order consolidating the cases.").

The *Allen* rule, based on a bright line distinction between formal and informal consolidation, is not a rule confined to this circuit; it has found favor elsewhere, as well. *See, e.g., United States v. Correa,* 114 F.3d 314, 317 (1st Cir.1997) ("Charges . . . should not have been regarded as

having been consolidated (and, therefore, related) unless original sentencing court entered an actual order of consolidation . . ."); *Green v. U.S.,* 65 F.3d 546, 548–9 (6th Cir.1995) ("Cases are not 'consolidated' for sentencing when they proceed to sentencing under separate docket numbers, do not arise from the same nucleus of facts, lack a formal order of consolidation, and result in different sentences."); *United States v. Alberty,* 40 F.3d 1132, 1134–5 (10th Cir.1994) (Defendant bears burden of demonstrating the existence of some formal consolidation order in order to support his claim that offenses were related.); *United States v. Klein,* 13 F.3d 1182, 1185 (8th Cir. 1994) (Defendant's prior felonies each "had a separate docket number, the charges involved burglaries of three different premises on three different days, and there was no order consolidating the three cases. In these circumstances, the trial court did not err in treating the three prior sentences as related."); *United States v. Lopez,* 961 F.2d 384, 387 (2d Cir.1992) (requiring a close factual relationship between offenses in the absence of a formal consolidation order); *United States v. Metcalf,* 898 F.2d 43, 45 (5th Cir.1990) (holding that concurrent sentences for offenses one year apart are unrelated in the absence of a factual similarity or a formal consolidation order).

were not processed together, *i.e.*, were not tried, disposed of, or sentenced together is persuasive evidence that the offenses are separate and distinct. Nor is a different conclusion warranted merely because the prior offenses in this case were processed under the same docket number;[5] this is a mere happenstance that, by itself, gives no reasonable assurance that there has been an independent, judicial consideration of relatedness as required by the governing joinder rule, in this instance D.C. Superior Court Rule 8.

In summary, the instant case is governed by the plain language of Application Note 3 and the *Allen* decision. Because there is no formal consolidation order, this case, like *Allen*, does not fit Application Note 3; the prior offenses were not "consolidated for trial or sentencing" and hence, given their factual distinctiveness, deserve to be counted separately for purposes of applying the career offender provision of U.S.S.G. § 4B1.1. Put another way, the factual distinctiveness of the Able murder and the nightclub shootings coupled with the fact that those offenses were processed, tried, and disposed of separately on different dates serves to trump the fact that the offenses, although initially indicted separately, were ultimately indicted together in a superseding indictment and processed under the same docket number. Defendant is therefore appropriately treated as a career offender pursuant to U.S.S.G. § 4B1.1.

A different result would be inconsistent with the goals of the Sentencing Guidelines to provide "reasonable uniformity in sentencing," See U.S.S.G. Ch. 1., Pt. A, intro comment. (n.3), and to provide a substantial term of imprisonment for repeat offenders. See

28 U.S.C. § 994(i). Additionally, given the violent nature of this defendant's past offenses, a different result would also contravene the Sentencing Guideline's goal of incapacitating violent offenders. See U.S.S.G. Ch.1, Pt. A, intro. comment. (n.2).

An appropriate order has issued.

The Clerk is directed to send a copy of this Memorandum Opinion to each counsel of record.

---

**5.** Although the Fifth Circuit in *United States v. Huskey*, 137 F.3d 283 (5th Cir.1998), reached a different conclusion, that case is distinguishable, and in any event unpersuasive, as it fails to follow *Allen*. In *Huskey*, there was no formal order of consolidation, but the Fifth Circuit panel was persuaded that the consolidation portion of Application Note 3 applied even in the absence of such a formal order. *See id.* at 288. *Huskey* is factually distinguishable because there, unlike this case, the prior offenses were tried and sentenced together. Note, however, that the Fifth Circuit panel considered determinative, not the fact that the offenses were tried and sentenced together, but the fact that they proceeded under

the same docket number. *See id.* In any event, *Huskey* is unpersuasive insofar as it concludes, contrary to *Allen*, that Application Note 3 is satisfied by informal consolidation. Interestingly, the Fifth Circuit's opinion seems to recognize that the Fourth Circuit would likely disagree with *Huskey*. Thus, the *Huskey* opinion notes that the Fourth Circuit would likely hold that "merging separate offenses under the same docket number is tantamount to formal consolidation" *only* when there is proof on the record, presumably a formal order, that a judge had actually contemplated the issue of relatedness. *See id.*